## James D. Brown *vs.* George N. Bigelow.

The rule of law that the measure of damages in an action for breach of warranty on the sale of a chattel is the difference between the actual value of the article sold and its value if it had been as warranted, is not affected by proof that the purchaser subsequently resold it for an increased price, especially if it does not appear that such sale by him was without warranty.

A bill of sale of "one horse, sound and kind," is a warranty of soundness, upon which the vendor is liable if the horse proves to be permanently lame, although the purchaser knew that he was lame a week before the sale, and his lameness was talked of before the sale, and the vendor then refused to give a warranty.

CONTRACT to recover damages for a breach of warranty of a horse.

At the trial in the superior court, before *Ames*, J., it appeared that the plaintiff and John Adams examined and tried the horse; that on the following day the plaintiff bought him, paying the sum of four hundred dollars by a check of Adams, and taking from the defendant a bill of sale, which contained the words "one chestnut horse, nine years old, sound and kind;" that the plaintiff, after ascertaining the price for which he could buy the horse of the defendant, bargained him to Adams, who undertook to pay and did pay to the plaintiff four hundred and twenty-five dollars in money and another horse worth about seventy-five dollars; and that the plaintiff, after making this bargain with

Adams, completed his contract with the defendant. It did not appear whether tne plaintiff warranted the horse to Adams, or whether he had ever paid or been called upon to pay anything to him. There was evidence to show that the horse was permanently lame. On these facts, the defendant requested the court to rule that the plaintiff could only recover nominal damages; but this request was refused.

The defendant then proved that the horse was lame when the plaintiff and Adams examined him, and that they were then informed by the hostler that he had been lame a week before; and the plaintiff, upon seeing the defendant, said, " I like him first rate, but he is lame some ;" to which the defendant answered, " Yes, I told you so; " and the plaintiff then said, " I must have a warranty," and the defendant refused to give one. The bill of sale was made afterwards, the body of it being in the plaintiff's handwriting, and there was no evidence of anything that was then said between the parties.

The defendant contended, upon this evidence, that the jury might find that the word " sound " in the bill of sale was not a warranty against this particular lameness; but the judge instructed the jury that the terms of the bill of sale were a warranty that the horse had no permanent or incurable lameness or other defect, and that under the bill of sale, no question being raised as to its execution, the only question for the jury was as to the amount of damages; and that the damages which the plaintiff would be entitled to recover would be the difference between the value of the horse if he had been sound and his actual value at the time of the sale.

The jury returned a verdict for the plaintiff, with $250 damages; and the defendant alleged exceptions.

*T. H. Sweetser & J. Nickerson*, for the defendant.

*S. J. Thomas*, for the plaintiff.

BIGELOW, C. J. The rule of damages for a breach of warranty on the sale of chattels is well settled and familiar. It is the difference between the actual value of the article sold and the value of the same article if it had been such as the vendor warranted it to be. *Stiles* v. *White*, 11 Met. 358. *Tuttle* v

*Brown,* 4 Gray, 460. The application of this rule is not changec or modified by the fact that a purchaser of a warranted article has sold it for the same or even a greater price than that which he paid for it. *Medbury* v. *Watson,* 6 Met. 257. We doubt very much whether this rule of damages would be affected by proof that the article purchased with warranty was bought, as in the case at bar, for the purpose of being delivered to a third party under a previous contract of sale, even if such resale was made by the original vendee without warranty, so that no loss or liability whatever would be incurred by him. The disposition which a purchaser makes of property is an independent and collateral fact, having no connection with the bargain by which he acquired his title. It is difficult to see how it can have any legitimate bearing on the damages which another person ought to pay him for a breach of a wholly distinct and separate contract. But if such evidence is competent, it ought to appear affirmatively that the resale was made by the original vendee on terms such as would preclude him from any loss or damage by reason of the breach of warranty by the original vendor. No such evidence was offered on the trial of this case. For aught that appears, the plaintiff may have in his turn given a warranty to the person who bought the horse of him, for a breach of which he may be liable in damages. As the case stood, there was nothing shown to take it out of the ordinary rule of damages where there has been a clear breach of warranty.

The construction of the written contract of warranty was exclusively for the court, and it was rightly interpreted to be a general warranty of the soundness of the animal. The doctrine that such a warranty does not include or cover patent and obvious defects, which are plainly visible to a purchaser, has no application to a case such as was proved at the trial, but only to one where it appears that a horse has been sold having a palpable defect, constituting unsoundness, such as the loss of an eye which could not have escaped the observation of the purchaser The doctrine rests on the reasonable presumption that the par ties could not have intended the warranty to apply to a defec rendering the horse unsound which was seen and known to both

parties at the time of sale. But here the appearance of the horse did not disclose actual unsoundness. The unsoundness was not patent. Lameness may or may not make a horse unsound. If it was only accidental and temporary, it would not be a breach of warranty ; but if it was chronic and permanent, arising from causes which were beyond the reach of immediate remedies, it would be clearly a case of unsoundness. In the case at bar, the evidence shows that the cause of the lameness was doubtful and obscure, and that its nature and the probability of its continuance were unknown to the purchaser. The reasonable inference is, that the warranty was intended to guard against the danger of loss in the event that the lameness proved to be serious and permanent. It is the very case in which a purchaser ought to be protected by a warranty.

*Exceptions overruled.*